UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

V.                                         Dkt  No. 95-870 (ERK)

FU XIN CHEN,

DEFENDANT.
- - - - - - - - - - - - - - - - - - - - - - - - X

## MOTION TO REDUCE SENTENCE PURSUANT TO
## 18 U.S.C. § 3582 (C)(1)(A)(i) UNDER THE FIRST STEP ACT

Defendant, Fu Xin Chen, pro se, respectfully move this Honorable Court for a sentence

reduction based on the extraordinary and compelling reasons discussed below, pursuant to the

amended 18 U.S.C. § 3582 (C)(1)(A)(i).


INTRODUCTION

Defendant Fu Xin Chen was sentenced in February 1997 to a mandatory term of life

imprisonment following his guilty plea for his association with the Plum Blossom Boys, a gang that

used violent kidnappings held as ransom.  The defendant was 19 years old at the time of his arrest in

1995.  He is not projected to be released.


Almost 27 years later, the defendant was in front of this Court pursuant to 18 U.S.C. § 3582

(C)(1)(A)(i) based on changes to the mandatory guidelines announced in *Booker v. United States*,

543 U.S. 220 (2005), the effects of COVID-19, and that the defendant was a juvenile at the time of

the offense.  Unfortunately for defendant Chen, the motion was unsuccessful.

As to age, the defendant based his claim on the new and developing brain science provided by Dr. Laurence Steinberg, the nation's leading neuroscientist and developmental psychologist, in *Cruz v. United States*, 2018 WL 154898 (D. Conn. Mar. 29  2019) where he testified that 17 and 18 year olds possess the same transient, mitigating qualities of youth, and that there is no basis in science to distinguish between them. *Id.* at 43.  Dr. Steinberg was also the lead scientist for the American Psychologist Association ("APA") in drafting the APA's amicus briefs in *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 550 U.S. 48 (2010) and *Miller v. Alabama*, *supra*.

The basis of the defendant's mandatory life without parole sentence are several robberies and kidnappings for ransom, an attempted murder of one victim, and the murder of one victim committed when he was 19 years old. *See United States v. Fu Xin Chen*, 95-CR-870 (ERK) (E.D.N.Y. July 6, 2021).

While many advocates and organizations agreed on the reach of the neuroscience used in *Miller* for those 18-19 years of age, however, Courts have been slow to adapt.  See ABA's HOUSE OF DELEGATES, RESOLUTION: Death Penalty Due Process Review Project, Section of Civil Rights and Social Justice, Seth Miller and Robert Weiner (Feb. 2018); see also (Im) maturity of Judgment in Adolescent: Why Adolescents May Be Less Culpable Than Adults  Elizabeth Cauffman  Ph.D. and Laurence Steinberg, Ph.D. 18 Behav Sci  & L. 741  742 n.1 (2000); When is an Adolescent an Adult? Accessing Cognitive Control in Emotional and Nonemotional Context, Cohen, Alexandra O., et al., 27 Psychological Science 547, 559 (2016); Psychosocial (Im) maturity from Adolescence to Early Adulthood: Distinguishing Between Adolescence Limited and Persisting Antisocial Behavior, Monahan, Kathryn C., et al., 25 Development and Psychopathology 1093, 1102-03; A Social Neuroscience Perspective on Adolescent Risk Taking, Steinberg, Laurence, 28

2

Developmental Review 78, 79.

Nevertheless, new and developing neuroscience supports the conclusion that 19 year olds possess the same transient qualities of youth as 17 and 18 year olds, and as Dr. Steinberg had testified in Cruz, there are no developmental differences between them.

On June 24, 2024, the defendant submitted a written request to the Warden asking him to move the Court for a reduction of his sentence under 18 U.S.c. § 3582(C)(1)(A). (See Exhibit "A").

Thanks to the amendment to § 3582(C)(1)(A) that was enacted as part of the First Step Act, the Court is now empowered to bring a measure of justice to defendant's sentence, and he respectfully ask this Honorable Court to do just that for the reasons set forth below  See P.L. 115-391, 132 Stat  5194  at 603 (Dec. 21  2018).

FACTUAL BACKGROUND

On or about March 25, 1995, defendant Fu Xin Chen engaged in numerous violent crimes, including one murder, as part of the Plum Blossom Boys youth gang.  See generally *United States v. Chen, supra*.  Because the defendant was facing the death penalty, he instead pled guilty and received a sentence of life imprisonment without the possibility of parole.

On June 24, 2024, the defendant submitted a written request to the Warden of USP ATWATER asking him to move this Court for a reduction of his sentence under 18 U.S.C. § 3582(C)(1)(A)(i).  The request was denied however, defendant Chen has since exhausted all administrative remedies available to him for him to petition this Court.

3

DISCUSSION

The Court now has the authority to reduce defendant Chen's sentence based on the extraordinary and compelling circumstances presented here.  First, it has the jurisdiction to hear this motion because all administrative remedies have been exhausted after the initial denial of his request on July 24, 2024.  Second, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested the Court with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction.  Third, as this Court is already aware, the circumstances presented here cry out for a sentence reduction

A. The Court Has Jurisdiction to Grant Relief for Extraordinary and Compelling Reasons

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984.  It provided that a District Court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court.  But although the Courts had the final decision making authority over whether a sentence would be reduced, the statute imposed a gatekeeper that authority could be invoked only upon a motion by the Director of the Bureau of Prisons.  Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the Court concluded that extraordinary and compelling reasons warranted the reduction.  18 U.S.C. § 3582 (C)(1)(A)(i); See also PL 98-473  98 stat  1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act which amended § 3582 (C)(A)(1). See PL 115-391, 132 stat. 5194, at § 603 (Dec. 21, 2018).  Under the amended statute, a Court can

4

now reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) if the Director of the Bureau of Prisons files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the Bureau of Prisons' failure to bring a motion, or if 30 days have lapsed from the receipt of such a request by the Warden of the defendant's facility.  Whichever is earlier. 18 U.S.C. § 3582 (C)(1)(A).

As noted above, defendant Chen submitted his request to the Warden at his facility on June 24, 2024.  Chen's request was denied on July 24, 2024, thus, he has fully exhausted all administrative remedies available to him. *United States v. Beck,* Case No. 13 CR 186-6  2019 WL 2716505, at 5 (W.D.N.C. June 28  2019) ("Among other things  [the First Step Act] add[s] a provision allowing Courts to consider motions by defendants for compassionate release without a motion by the Bureau of Prisons Director so long as the defendant has asked the Director to bring such a motion the Director fails or refuses.").  Accordingly, Chen is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(C)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

B. The Relief Requested Here Is Consistent with Both the Text of the Statute and the Commission's Policy Statements.

1. Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific Enumerated Set of Circumstances

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(C).  Indeed, the legislative history confirms that it intended to grant federal sentencing Courts broad discretion to make those determinations on a

case by case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress' initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(C):

> The Committee believes that there may be unusual cases in which an eventual
> reduction in the length of a term of imprisonment is justified by changed
> circumstances. These would include cases of severe illness, cases in which "other
> extraordinary and compelling circumstances" justify a reduction of an unusually
> long sentence, and some cases in which the sentencing guidelines for the offense
> of which the defend[ant] was convicted have been later amended to provide a
> shorter term of imprisonment.

*Id.* at 55-56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing Courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if there is a justification for reducing a term of imprisonment." *Id.* at 56.

The situations listed in § 3582(C) were thus intended to serve as "safety valves for modification of sentences, enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system." *Id.* at 121. "This approach was intended to keep the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and it permitted "later review of sentences in particularly 'compelled

situations.'" *Id.* (emphasis added)

Notably, Congress imposed no limitations on the Court's authority to make such determinations, declining to otherwise constrain the judge's discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence." S.Rep. No. 98-225 at 55-56.

Unfortunately, the establishment of the Bureau of Prisons as a gatekeeper effectively eliminated the safety valve. The Bureau of Prisons, which is of course part of the Department of Justice, hardly ever opened the gate. See, e.g.. The Answer is No!: Too Little Compassionate Release in U.S. Federal Prison, Human Rights watch, at 2 (Nov. 2012) (noting that between 1992 and 2012 the average annual number of prisoners who received compassionate release following a motion by the Bureau of Prisons was less than two dozen). As a result, Congress, through the First Step Act, allowed direct access to the Sentencing Court once an inmate's request to the Bureau of Prisons has been exhausted.

1 The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances.

When enacting § 3582(C), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and Compelling reasons" to the U.S. Sentencing Commission (the "Commission"). See 28 U.S.C. § 994(t) ("The Commission shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); see also 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section

[]...3582(C) of Title 18"). The resulting policy statement by the Commission set forth the following

factual considerations: (i) the medical condition of the defendant (including terminal illness and

other serious conditions and impairments); (ii) the age of the defendant (for those 65 and older with

serious deterioration related to aging who have completed at least 10 years or 75 percent of the term

of imprisonment); (iii) the family circumstances of the defendant (where a child's caregiver or

spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as

determined by the Bureau of Prisons U.S.S.G. Sec. 1B1.13, Application Note 1(A). The fourth

category specifically includes "an extraordinary and compelling reason other than, or in combination

with," the first three. *Id.* Additionally, the commentary makes clear that the extraordinary and

compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a

reduction in term of imprisonment." U.S.S.G. 1B1.3, Application Note 2. In other words, even if an

"extraordinary and compelling reason reasonably could have been known or anticipated by the

Sentencing Court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence

reduction may exist even when an inmate is not elderly, ill, or facing complicated family

circumstances. And though the policy statement which has not been amended since the passage of

the First Step Act the Director of the Bureau of Prisons with the authority to determine when such

"other reasons" might warrant a reduction in a particular case, that language is now irreconcilable

with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without

any response from the Bureau of Prisons or even if the Bureau of Prisons expressly decides that no

reasons warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding

on the Courts for two reasons: (1) the Guidelines are advisory only, *see United States v. Booker*, 543

U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step

Act. *See United States v. Da Cai Chen*, 127 F.3d 286, 291 (2nd Cir. 1997) (commentary that relates to a statute, or to a guideline that mirrors a statute (as here), is not entitled to deference); *see also United States v. Piernianzi*, 23 F.3d 670, 683 (2nd Cir. 1994). Indeed, at least three District Courts since the passage of the First Step Act, have observed that § 1B1.13 has not yet been updated to reflect that defendants (and not not just the Bureau of Prisons) may move for compassionate release, *United States v. McGraw*, No. 2:02 CR 00018 (LJM) (CMM) 2019 WL2059488, at 2 (S.D. Ind. May 9 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *Contu-Rivera*, 2019 W1 2578272, at *2 n.1; *see also Cantu*, 2019 WL 2498923, at 4 ("Given the changes to the statute, the policy statement provision that was previously applicable to 18 U.S.C. § 3582(C)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence modification provisions under Sec. 3582. ")

The Court's authority to reduce defendant Chen's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he Court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." As mentioned above, in amending the language of 18 U.S.C. § 3582 (C)(1)(A), Congress finally empowered "Courts" to make this critical determination even in the face of a Bureau of Prisons determination that a defendant's case is not extraordinary or compelling.

Thus, in June 2019, a District Court in Texas held as follows: [T]he correct interpretation of §

3582(C)(1)(A) statutory history and structure, and consideration of Congress' ability to override

any of the Commission's policy statements at any time' [   ] is that when a defendant brings a

motion for sentence reduction under the amended provision, the Court can determine whether

any extraordinary and compelling reasons other than those delineated in U.S.S.G. $ 1B1.13

cmt. N.1 (A) (C) warrant granting relief.

*Cantu*, 2019 WL 2498923, at *5. This Court, therefore, may make an independent assessment of

defendant Chen's case in considering whether extraordinary and compelling reasons warrant the

reduction of his sentence. *See also, Cantu*, 2019 2498923, at 4 (Given the changes to the statute, the

policy statement provision that was previously applicable to 18 U.S.C. § 3582(C)(1)(A) no longer fits

with the statute and thus does not comply with the congressional mandate that the policy statement

must provide guidance on the "appropriate use of sentence modification provisions under § 3582.");

*Cantu-Rivera*, 2019 WL 2578272, at 2 n.1 (finding authority to determine that defendant was entitled

to relief under the catch all provision in the commentary to § 1B1.13 because the "current policy

statement predates the enactment of the First Step Act and is not likely to be amended within the

foreseeable future due to lack of a sufficient number of serving members of the Sentencing

Commission."); *United States v. Beck*, No. 1 13 CR 186-6 2019 WL 2716505 at *6 (M.D.N.C. June

28 2019) ("while the old policy statement provides helpful guidance, it does not constrain the Court's

independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence

reduction under § 3582 (C) (1) (A) (i).").

3. Extraordinary and Compelling Circumstances Warrant A Reduction in Chen's Sentence

Youth are different. The practice of sentencing juveniles to mandatory terms of life without

parole sentences for crimes, including murder, committed before their 18th birthday has received wide

condemation for many years.  Finally, in April 2012, this practice was deemed unconstitutional in *Miller v. Alabama*, 567 U.S. 460 (2012), where the Supreme Court declared the sentencing scheme violates the Eighth Amendment's prohibition against cruel and unusual punishment because they preclude Courts from taking into account the "mitigating qualities of youth." *Id.*

As cited in his successive § 3582 motion, *Miller* relied heavily on advances in neuroscience documenting how the adolescent brain differs fundamentally from that of adults.  Id. at 471-72.  While the science for those under age 18 has been well established, the research on development in the brain beyond age 18 had only begun towards the end of 2000's and as we moved into 2010.  Thus, there hasn't been a great deal about brain development during late adolescence when the Supreme Court decided *Miller* until much more recently, and as we moved into 2020.  These latter scientific studies are now providing a greater understanding of the criminal culpability of those at age 18 and 19, as defendant Chen had seeked in his previous First Step Act motion.  But unfortunately, such legal protections have not yet been extended to cover offenders beyond the arbitrary age of 18 despite the scientific belief that youth at age 18 and 19 are susceptible to identical influences that plague those at age 17; the same scientific belief that *Roper*, *Graham*, *Miller*, and *Montgomery* relied upon.

In *Moore v. Texas*, U.S. 137 S.Ct. 1039 (2017), the Supreme Court's evaluation of the weight to be given to the scientific principles relied upon in its prohibition on death sentences for the intellectually disabled another class of offenders with categorically diminished culpability is instructive here.  Permitting states to disregard current medical standards in the Eighth Amendment context would render the prohibition on sentencing those with intellectual disabilities to death a "nullity, and the Eighth Amendment's protections of human dignity would not become a reality." Id. at 1053 (quoting *Hall v. Florida*, 134 S.Ct. 1986, 1999 (2014)).  Justice Kennedy's discussion in Hall of

the central role of the medical community in establishing the framework where in the Court defined

intellectual disability applies with equal force to the scientific community's role in establishing the

framework for defining who is an adolescent:

> It is the Court's duty to interpret the Constitution, but it need not do so in isolation.
> The legal determination of intellectual disability is distinct from a medical
> diagnosis, but it is informed by the medical community's diagnostic framework.
> *Atkins v. Virginia*, 536 U.S. 304 (2002), itself points to the diagnostic criteria
> employed by psychiatric professionals. And the professionals community's
> teachings are of particular help in this case, where no alternative definition of
> intellectual disability is presented and where this Court and the states have placed
> substantial reliance on the expertise of the medical profession.

*Hall*, 134 S.Ct. at 2000.

It is undisputed that age 18 and 19 are considered a time of ongoing childhood development

where the same characteristic of youth and propensity for change identified by the *Miller* Court may

be sufficiently present to justify a lesser sentence. That 18 and 19 year olds may not be subjected to a

mandatory life without parole sentence is not only consistent with the reasoning in *Miller*, but is

compelled by *Miller's* reliance on and adoption of the scientific consensus regarding childhood and

adolescent development as well as the holdings of the Supreme Court. This fact alone constitutes an

extraordinary and compelling basis for a reduction of Chen's sentence.

In addition, a motion for relief under 18 U.S.C. § 3582(C)(1)(A)(i) requires a Court to

consider other factors that may warrant relief, including the defendant's rehabilitation, the sentencing

disparities with his co-defendants, and other factors bearing on the person Chen is today. *See also*

*Cantu Rivera*, 2019 WL 2578272, at 2 (the Court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate). As set forth below, those factors further establish the sort of extraordinary and compelling reasons" that warrant a reduction of Chen's life without parole sentence.

C. The Criteria for Reassessing the Length of Fu Xin Chen's Sentence Weigh Strongly in Favor of a Sentencing Reduction.

In determining whether defendant Chen's sentence should be reduced the Court must decide, inter alia, whether he presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief in Chen's case.

I. Chen Is Not a Danger.

If Chen was released, he would not pose a danger to the community. He does not dispute the terrible facts of his crimes, any involvement in any murder, whether he was the actual murderer or not is a horrific crime. However, the crimes were committed while he was still a teenager, and over 29 years ago. Chen is remorseful for his role in his crimes, and evident by his willingness to change, he has been working towards a productive lifestyle where he can be an asset to his community. Many defendants similar in Chen's situation who were no less culpable have received far more lenient sentences as a result of *Miller v. Alabama* while Chen continues to serve an egregiously long sentence. *Id. Cruz, supra*; *see also United States v. Brian Chan*, 90-CR-1019(RJD) (E.D.N.Y. Jan. 6, 2022). The fact of his rehabilitation indicates that he will not be a danger if released or otherwise militates against the sentence reduction requested here.

13

When Chen was arrested in 1995, he was only 19 years old, with no prior record. Like many others, he was young and naive, without an adult role model, and had sought guidance in all the wrong places. He has accepted responsibility for his poor choices, and dedicated himself to becoming a better person during the decades he has spent incarcerated. While in prison, he has worked hard to better himself after a troubled first decade and has participated in thousands of hours of educational and wellness courses. In addition, he had also completed GED self study and obtained his GED on August 24, 1998, English as Second Language and proficiency on July 30, 2009, Best Two Ways to Find A Job, Putting the Bars Behind You, Preparing for Success, GRT Jobs Without a College Degree, Complete Job Application, Stress Management Class, GRT Without a College Degree 2, Skills Identification, Real Estate, Positive Thinking, Positive Thinking 2, Achieving Goals and Objectives, Stop the Violence, Vocation Training: MAJ APPL Repair, Stock Investing, Effective Commerce, Vocation Training: Web Design, Basic Job Interview, Writing to be Understood, Prison to Paycheck, Typing Efficiency, TGC Economics, TGC Joy of Thinking, TGC Complexity, TGC Strategic Thinking, TGC How We Learn, TGC Money and Banking Principles, Consumer Math Budgeting, and Consumer Math Banking.

For more than 28 years serving a mandatory life sentence, during which he has no realistic possibility for release, Chen has had ample time to reckon with his wrongdoing. He has not been able to escape the mental anguish of what he had done to Ko-Lai Zhang and her family by participating in her senseless murder; all in the name of a gang he believed was his family that had his best interest. That thinking was wrong, being in a gang was wrong, and he would like an opportunity to help save a life by deterring at-risk youth into making the wrong decision to join a gang as he had. If given an opportunity, the defendant would like to be part of a youth organization and work with at-risk youth by providing coaching to both the youth and their parents to strengthen the familial relationship and

14

support.

The fact that Chen will be an asset to the community, rather than a danger, is further demonstrated by a strong family support, which will serve as his bedrock should he be released. He has maintained close ties with his family, and reconnected with his parents during the years of his incarceration. Chen has a strong desire to give back to his community. He pictures himself guiding at-risk youth and becoming someone they can look up to, a role model he never had. Back by this support, and in light of his recent history, there is no reason to believe Chen would present a danger to society.

2. The § 3553(a) Factors Weigh Strongly in Favor of Relief.

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Chen's motion for a sentence reduction should be granted. As discussed above, the history and nature of his involvement in the gang, in which he was not a leader or facilitator, coupled with a record devoid of any other criminal convictions, weigh in favor of a reduced sentence. Chen's role and participation in the crimes he was convicted of were the actions of a misguided teen who has already spent almost the last three decades in prison. He has maintained strong family ties and has used his time while incarcerated to complete numerous educational courses while learning enough skills to find employment should he receive a second chance.

The 28 plus years Chen has already served in prison have been transformative for him. Chen has dedicated himself to his rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." This factor weighs heavily in support of granting relief. *See*

15

*Cantu-Rivera*, 2019 WL 2578272, at 2 (recognizing the "extraordinary degree of rehabilitation" Mr. Cantu-Rivera accomplished and cared for other inmates as factors justifying the reduction of his sentence). The time Chen has already served is more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct.

Finally, this Court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. $ 3553(a)(6); *see also Cantu-Rivera*, 2019 WL 2578272 at 2 (finding a reduced sentence would "also avoid unwarranted disparities among defendants with similar records convicted of conduct" because defendant's time served "exceeds the sentences imposed on other members of the drug trafficking conspiracy."). This factor, too, weighs strongly in favor of a sentence reduction for Chen. Guo-Shun Wu and Ping-Jing Wu, who took part in numerous criminal conducts with Chen received relatively light sentences because of their cooperation with the government. Even taking into account credits for accepting responsibility – where the defendant had also accepted responsibility – and for providing substantial assistance to the government, there are extraordinary disparities in this case. And, as previously stated, Chen Is Deserving of Mercy.

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07 CR 00874, 2019 WL 1760840, at 8 (E.D.N.Y. Apr. 22, 2019). The repercussions of Chen's excessively harsh sentence cannot be overstated. At the time of his arrest, Fu Xin Chen was only 19 years old. He had a very unpleasant childhood, and was raised in an environment that endangered him and aberrant toward the principles and rules commonly acceptable to conventional society. His father was hardly around, he and their acquaintances often operated on

16

the criminal fringe of society, and his exposure to that element from a young age made it only natural for him to adopt many of their mindsets. As a young teenager, Chen arrived in New York City – after months at sea aboard a smuggling ship under inhumane conditions – with no one to rely upon. Without any means to provide for himself or knowing where his next meal will come from, he ultimately became an easy recruiting target for the gang by the age of seventeen. Chen's chronological age belied his immaturity, impulsivity, and failure to appreciate the risks and consequences of his actions. Throughout his incarceration, even without any hope of parole, Chen has maintained an optimistic and positive outlook on life.

As described above, Chen has completed thousands of hours of educational courses. He spent a lot of time thinking about his purpose in life and what he wants to leave behind in the world. He has advised others in prison to do the same and to live a clean life while incarcerated and once released. Through his actions and his words, Chen exhibits deep remorse for the serious crimes he committed. He reflects on the decisions that he previously made on a daily basis and deeply regret his criminal conduct. Chen's experiences have shaped him into the man he is today and the man that he will be if he is released. Chen has kept his faith in the justice system, and he has an unwavering commitment to becoming a productive member of society if given a second chance. He has a family ready to support him and a life to build if released, a life for which he has been preparing for decades, despite a sentence that would suck the will to live out of many. Chen's recent conduct in prison, participation in rehabilitation programs, and pronounced efforts in learning and improving himself all demonstrate that he is deserving of the relief sought.

In the following years after *Miller*, Courts have evolved in determining a distinction between a juvenile and an adult. That a nineteen year old is still a very young person, and to that

extent, many Courts are now considering very seriously the propriety of sentencing them to a life term of imprisonment. The First Step Act authorizes this Court to reduce Chen's sentence to a more just term of imprisonment. Thus, the defendant Fu Xin Chen respectfully asks this Honorable Court to recognize that he deserves mercy and redemption.

CONCLUSION

The need for lifetime incarceration or separation from society being necessary or warranted, many life sentences commonly imposed in the 1990's or 2000's are today disfavored. Unfortunately, such legal protections have not yet been extended to cover offenders beyond the arbitrary age of eighteen despite the scientifically accepted belief that youth at age nineteen remained susceptible to the identical influences that plague juveniles. However, with the passage of the First Step Act, Congress has now given the Court the power to grant Chen relief from that sentence. Chen respectfully requests that this Court find that there are "extraordinary and compelling" reasons warranting a reduction in his sentence, and reduce his mandatory life sentence accordingly.

Dated:

8-19-2024 , 2024

Respectfully submitted,

Fu Xin Chen - Pro Se

## CERTIFICATE OF SERVICE

I, Xin Fu Chen, do hereby certify under the penalty of perjury, that I placed the foregoing

Motion to Reduce Sentence  in the U.S. Mailbox located at USP Atwater, P.0. Box 019001, Atwater,

CA 95301, with prepaid first class postage and properly addressed to:


Nicholas Axelrod

Asst  U.S. Attorney

U.S. Attorney's Office

271 Cadman Plaza East

Brooklyn, N.Y. 11201


Dated: _8 - 19 -2024_ , 2024


Xin Fu Chen

Reg. No. 00862-111

P.O.  Box 019001

Atwater, CA 95301

# Exhibit A

TRULINCS  00862111 - CHEN, FU XIN - Unit: ATW-F-B

---------------------------------------------------------------------------------------------------------

FROM: 00862111
TO: Warden
SUBJECT: ***Request to Staff*** CHEN, FU, Reg# 00862111, ATW-F-B
DATE: 06/24/2024 12:56:54 PM

To: Acting Warden Ms, Sliver
Inmate Work Assignment: Rec Orderly

I am requesting of the Warden to file a motion for reduction in sentence on my behalf pursuant to 18 USC 3582(c)(1)(A) and the First Step Act. I believe I'm eligible for a sentence reduction based on the " Extraordinary and Compelling" reasons presented below:
1) Unusually long sentence, on the basis of the U.S.Sentencing commission's proposal in USSG 1B1.13(b)(6);

2) My youthfulness at the time of the offense, pursuant to USSG 1B1.13(b)(2). I was 19 years old when the instant offense was committed in 1995;

3) Unwarranted sentencing disparity. Defendants with similar cases as mine, are being granted reduction in sentence and compassionate release under section 3582(c)(1)(A) and the First Step Act, having their life sentence reduced to terms of 20-35 years. Recently, an inmate ( Mr., Piyarath Kayarath ) was granted reduction in sentence from life to 34 years, and was released from USP Atwater, for similarly situated case.

4) I have engaged in exemplary rehabilitation and I am classified as low recidivism risk. I was sentenced when the guidelines were mandatory, but today, the guidelines are no longer mandatory, therefore, the change in the law by U.S. "V" Booker also constitute extraordinary and compelling reasons see USSG 1B1.13(b)(5) ( "Other reasons").

Thank you for your time and consideration !

United States Penitentiary - Atwater
P. O. BOX. 019001
Atwater. CA 95301



CERTIFIED MAIL

9589 0710 5270 0409 7947 36

Legal Mail !

To: The clerk's office . U.S. Courthouse
225 Cadman Plaza. East. Room 118 S
Brooklyn, NY 11201 - 1818

USMS